Russell S. Thompson, IV (029098)
Thompson Consumer Law Group, PLLC
5235 E. Southern Ave., D106-618
Mesa, AZ 85206
Telephone: (602) 388-8898
Facsimile: (866) 317-2674
rthompson@ThompsonConsumerLaw.com
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Vickie Corr, *on behalf of herself and all others similarly situated*, <br><br> Plaintiff, <br><br> vs. <br><br> RSKM, LLC dba E&A Medical Billing & Insurance Services, <br><br> Defendant. | Case No. 2:18-cv-02323-DLR <br><br> **JOINT MOTION FOR CLASS CERTIFICATION AND PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

Plaintiff Vickie Corr ("Plaintiff") and Defendant RSKM, LLC dba E&A Medical Billing & Insurance Services ("Defendant") (together "the Parties") respectfully move this Court to enter an order:

1.    Preliminarily certifying a class of individuals for settlement purposes ("the Class") as set forth in the Parties' proposed settlement agreement (the "Agreement"), attached as Exhibit 1;

2.    Preliminarily approving the Agreement pursuant to Rule 23 of the Federal Rules of Civil Procedure;

3.    Conditionally certifying Plaintiff as the named-representative of the Class;

4.      Conditionally certifying Plaintiff's counsel as counsel for the Class;

5.      Approving the form of the proposed class notice ("the Notice"), attached as Exhibit 1-A, and the parties' proposed method of distribution of the Notice to the Class, as set forth in the Agreement; and

6.      Setting a final fairness hearing to determine whether the proposed settlement is fair, adequate, and reasonable.

## I.      Introduction

Defendant is alleged to have violated sections 1692g and 1692e of the Fair Debt Collection Practices Act ("FDCPA") with respect to the debt collection letter and envelope it sent to Arizona consumers. Through the envelope's window (the "Envelope"), Defendant uses a letterhead that includes the name "E&A Medical Billing & Insurance Services" and states "**DELINQUENT CLAIMS DEPT.**" (the "Letterhead Template"). Plaintiff alleges that by including this language, Defendant used any language or symbol on any envelope when communicating with a consumer by use of the mails. *See* 15 U.S.C. § 1692f(8). Plaintiff further alleges that Defendant was prohibited from using its business name because it indicates that Defendant is in the debt collection business. *Id.* Defendant denies liability.

Further, while referring to "E&A Medical Billing & Insurance Services" at the top of its letter and through the envelope window, the body of the letter states the account has been referred to RSKM, LLC (the "Template"). The letter notes that "RSKM" will assume the validity of the Debt if not disputed, "RSKM" will obtain and mail verification if it receives a written dispute, and "RSKM" will provide the name and address of the

original creditor if requested in writing. Nowhere in the letter does it explain the relationship between "E&A Medical Billing & Insurance Services" and "RSKM, LLC." The letter goes on to state that "RSKM" will assume the validity of the Debt if not disputed, "RSKM" will obtain and mail verification if it receives a written dispute, and "RSKM" will provide the name and address of the original creditor if requested in writing. Accordingly, Plaintiff alleges that the Template fails to meaningfully convey the notices required by 15 U.S.C. § 1692g(a) and is false, deceptive, or misleading. *See* 15 U.S.C. § 1692e. This case thus hinges on whether Defendant's standardized debt collection letter and envelop run afoul of the FDCPA. Defendant denies liability.

The Parties now move to certify the following class, for settlement purposes:

> All natural persons with an Arizona address to whom Defendant sent a letter based on the Template in connection with the collection of a consumer debt on or after July 24, 2017 through July 24, 2018.

*See* Exhibit 1.[1]

Including Plaintiff, the Parties have identified 7,335 Class Members through discovery. After an arm's-length negotiation, the Parties have reached an agreement to resolve this case on a classwide basis, wherein Class Members who submit claims are expected to receive around $12 each. Plaintiff and her counsel believe that this settlement is fair, reasonable, and adequate, and in the best interests of the class members— particularly in light of the limitation on recoverable damages for the Class. This Court

---

[1] While Plaintiff previously sought to certify two classes (the "Template Class" and the "Letterhead Template and Envelope Class"), the unnamed class members are identical for each class. *See* Declaration of Russell S. Thompson IV, attached as Exhibit 2, at ¶17. Thus, to simplify this matter, only one class is necessary.

should accordingly enter the accompanying order granting conditional class certification and preliminary approval of the settlement, attached as Exhibit 1-B.

## II.    Summary of the Settlement Terms

The Agreement defines a settlement Class under Rule 23(b)(3) comprising all individuals in the state of Arizona to whom Defendant sent a letter based on the Template[2] in connection with the collection of a consumer debt on or after July 24, 2017 through July 24, 2018.  Under the Agreement, Defendant will create a Settlement Fund in the amount of $26,035.00.  The Settlement Fund will be used to (1) pay the Claims Administrator's reasonable expenses, which are expected to be below $15,000, (2) compensate Plaintiff, who is expected to request $2,000, representing $1,000.00 in statutory damages and $1,000.00 for her service to the Class, and (3) compensate Eligible Class members.  Class Members who submit a claim form will receive a pro-rata share of the amount that remains in the Settlement Fund after payments to the Claims Administrator and Plaintiff have been made. To the extent those amounts are less than $15,000 and $2,000, respectively, they will be paid to Eligible Class Members..  Thus, if ten percent of the Class Members timely submit claims, each Eligible Class Member would receive at least $12.31.  Class Members who do not submit a claim form will not receive a settlement payment.

---

[2] The Template is defined as the standardized collection letter used by Defendant to collect consumer debts containing language substantially similar to the letter sent to Plaintiff attached as Exhibit A to the original complaint filed in this case, Doc. 1-1.

Defendant will also separately pay an award of attorney's fees and expenses to class counsel, in an amount not to exceed $15,000, subject to Court approval.

The Agreement calls for direct notice to the Class via first class mail. Class Counsel has in its possession the names and recent addresses of each class member, and will provide the foregoing information to as the Class administrator, who will take all reasonable steps necessary to ensure that each Class Member receives direct mail notice, including updating addresses for any mail returned as undeliverable.

## III.    This Court should preliminarily certify the Class.

To certify the proposed settlement Class, Plaintiff must satisfy each of the four requirements of Rule 23(a), referred to as numerosity, commonality, typicality, and adequacy of representation, as well as one of the requirements Rule 23(b). *Lucas v. GC Servs. L.P.*, 226 F.R.D. 337, 339 (N.D. Ind. 2005) (certifying FDCPA class). Because certification is sought in the context of a settlement, the requirements of Rule 23(a) and 23(b)(3) are readily satisfied here. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial.").

### A.    The requirements of Rule 23(a) are met.

#### 1.    Numerosity

The class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "The numerosity requirement is not tied to any fixed numerical

threshold" and "courts *need not determine the exact size* of a class in order to find numerosity satisfied." *R.P.-K. ex rel. C.K. v. Dep't of Educ., Hawaii*, 272 F.R.D. 541, 547 (D. Haw. 2011) (emphasis added). There is a general consensus that more than 40 class members is considered sufficient, *see* Newberg, Class Actions § 3.05 at 3–25; 3B Moore's Federal Practice ¶ 23.05(1) at 23–143–45 (2d ed. 1995) (collecting cases), though some courts have said that "[w]here the class is twenty-five or more, joinder is usually presumed impracticable." *Talbott v. GC Servs. Ltd. P'ship*, 191 F.R.D. 99, 102 (W.D. Va. 2000). Here, the Template was used to communicate with 7,335 individuals, including Plaintiff, during the relevant class period. *See* Exhibit 2 at ¶ 20.

### 2.    Commonality

Commonality requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[C]ommonality is often found in consumer fraud and related actions where standardized documents and procedures are used." *Legge v. Nextel Communs., Inc.,* No. CV 02-8676 DSF (VBKx), 2004 WL 5235587, at *5 (C.D. Cal. Jun. 25, 2004). Here, the common contention of the Class Members is that Defendant (1) sent them a standardized letter using the conflicting names "E&A Medical Billing & Insurance Services" and "RSKM, LLC", and (2) using an envelope where the names "E&A Medical Billing & Insurance Services" and "**DELINQUENT CLAIMS DEPT**." appeared through the envelope window. *See* Doc. 1-2.

Questions common to all Class Members are, therefore, whether Defendant (1) violated §§ 1692e, 1692g(a) of the FDCPA by sending a letter that failed to explained the relationship between the two named entities, making the name of creditor ambiguous;

and (2) violated § 1692f(8) by using language on its envelopes indicating that the letter was from a debt collector. *See* 15 U.S.C. § 1692f(8). The commonality requirement is met.

### 3.    Typicality

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)). Here, Plaintiff's claims, like all Class Members' claims, arise out of the receipt of a common collection letter, sent in a standardized envelope. Thus, Plaintiff's claims are typical of those of the other Class Members she seeks to represent. *See Abels v. JBC Legal Grp., P.C.*, 227 F.R.D. 541, 545 (N.D. Cal. 2005) ("Each of the class members was sent the same collection letter as [plaintiff] and each was allegedly subjected to the same violations of the FDCPA. Therefore, this Court concludes that claims of the class representative are typical of the claims of the class.").

### 4.    Adequacy

Next, this Court must determine whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "In order to satisfy that requirement, the prospective class representative must demonstrate that 1) he has no conflict of interest with the prospective class, and 2) he will vigorously prosecute the

case." *Mularkey v. Holsum Bakery, Inc.*, 120 F.R.D. 118, 121 (D. Ariz. 1988) (citing *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 562 (2nd Cir. 1968)).

Plaintiff is a consumer who represents to the Court that she has no conflicts of interest with the rest of the class members.  Doc. 1 at ¶ 46.  This is sufficient to establish the adequacy of the named-plaintiff in an FDCPA action on the legality of a dunning letter.  *See Bogner v. Masari Investments, LLC*, 257 F.R.D. 529, 532 (D. Ariz. 2009).

Plaintiff has retained putative class counsel with experience litigating FDCPA and class action matters.  *See e.g., Ogletree v. Cafe Valley Inc*., Case No. CV-16-03881-PHX-JJT (D. AZ. Nov. 6, 2017) (appointing Thompson Consumer Law Group as class counsel in FCRA action); *Jordan v. Freedom Nat'l Ins. Servs. Inc.*, No. CV-16-00362-PHX-DLR, 2016 WL 5363752, at *4 (D. Ariz. Sept. 26, 2016) (appointing Thompson Consumer Law Group as class counsel in EFTA action); *see also Maloy v. Stucky, Lauer & Young, LLP*, No. 1:17-CV-336-TLS, 2018 WL 6444916, at *2 (N.D. Ind. Aug. 15, 2018) (appointing Russell Thompson IV as class counsel in FDCPA class action); *Dove v. Moody, Jones, Ingino & Morehead, PA*, No. 3:15-cv-00251 (M.D. Fla. April 18, 2016) (approving class settlement of EFTA action and certifying the undersigned as Class Counsel in EFTA action).  Plaintiff and her counsel are adequate.

### B.    The requirements of Rule 23(b)(3) are met.

#### 1.    Common questions of law and fact predominate over any potentially individualized inquiries.

Rule 23(b)(3) is designed to promote economy and efficiency in actions that are primarily for money damages.  As such, it must be shown that the common questions

pertaining to the class will predominate over the issues relating to only individual members. " '[T]here is substantial overlap between' the test for commonality under Rule 23(a)(2) and the predominance test under 23(b)(3)." *Parra v. Bashas', Inc.,* 291 F.R.D. 360, 390 (D. Ariz. May 31, 2013) (quoting *Wollin v. Jaguar Land Rover North American LLC,* 617 F.3d 1168, 172 (9th Cir. 2010)).  Courts often find that the predominance requirement is satisfied when the class's claims arise out of the mailing of a common dunning letter.

> The common fact in this case is that the putative class members were subjected to Defendants' policy of sending collection letters, which are alleged to violate the FDCPA. Thus, the legal issues arising from Defendants' letters are the same for each class member. Here, the issues common to the class—namely, whether the Defendants' systematic policy of sending collection letters, and whether those letters violate FDCPA—are predominant.

*Abels*, 227 F.R.D. at 547.

Here, all Class Members were sent letters using the letter and envelope. Doc. 9 at ¶ 24; Exhibit 2 at ¶ 20. Thus, the predominance requirement is easily met, since each Class Member's claim can be fully adjudicated with respect to common evidence and there will be no individual issues to litigate.

### 2.    A class action is the superior method of adjudication.

When evaluating the superiority requirement of Rule 23(b)(3), the Court must typically consider (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of claims in the particular

forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).  "A class action is the superior method for managing litigation if no realistic alternative exists."  *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996).

The individual members of the class have little interest in controlling individual actions, because these violations are relatively minor (though significant in the aggregate) and the FDCPA only offers a modest recovery to incentivize individual actions. For this reason, the FDCPA specifically contemplates the use of the class action mechanism, *see* 15 U.S.C. § 1692k(a)(2), and "[c]ase law affirms that class actions are a more efficient and consistent means of trying the legality of collection letters."  *Abels*, 227 F.R.D. at 547 (collecting cases).  At the same time, the alternative—having each consumer bring her own claim for a nominal amount of damages regarding the identical letter—would flood the courts with redundant litigation.

The Parties are unaware of any similar litigation taking place.  Concentrating the Class Members' claims in this forum is logical, since the consumers all received letters at an address in the State of Arizona.  Finally, there will be no difficulties in managing this class action since Defendant possesses the names and addresses of the members of each class, and—as contemplated by the FDCPA—their recovery will be a pro rata share of Defendant's net worth.  *See* 15 U.S.C. § 1692k(a)(2).  The superiority requirement is met.

**IV.    This Court should preliminarily approve the settlement as fair, reasonable, and adequate.**

"Where 'the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement.'" *Gonzalez v. Germaine Law Office PLC*, No. CV-15-01427-PHX-ROS, 2016 WL 3360700, at *1 (D. Ariz. June 1, 2016) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003)). "Before granting preliminary approval of a settlement, the Court must determine whether the proposed class can be certified for settlement purposes." *Id.* (citing *Manual for Complex Litigation* (4th Ed. 2004) § 21.632). "When a court is evaluating the certification question in the context of a proposed settlement class, questions regarding the manageability of the case for trial purposes are not considered." *Id.* (citing *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). "However, the Ninth Circuit has long held courts must be particularly careful when approving classes for settlement purposes." *Id.* (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)).

"Once a settlement class is preliminarily certified, the court decides whether preliminarily to approve the proposed settlement." *Id.* at *4. Rule 23(e) requires the Court to "evaluate a proposed settlement for fundamental fairness, adequacy, and reasonableness before approving it." *Id.* These ultimate questions involve the consideration of numerous factors, such as the "strength" of Plaintiff's case, "the risk, expense, complexity, and likely duration of further litigation," whether "class action status" may be jeopardized before trial, the "amount" of the settlement, "the extent of

discovery completed," and "the experience and views of counsel," among others.  *Id.* (quoting *Staton*, 327 F.3d at 959).

"However, at the preliminary approval stage, courts need only evaluate 'whether the proposed settlement *appears to be the product of serious, informed, non-collusive negotiations, has no obvious-deficiency, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval.*' " *Id.* (quoting *Horton v. USAA Cas. Ins. Co.*, 266 F.R.D. 360, 363 (D. Ariz. 2009)) (emphasis added).

A.    **The Agreement was the result of serious, informed, and non-collusive negotiations.**

While Plaintiff previously moved for class certification, the motion was never decided and the Parties now seek approval of a class settlement prior to certification.  The Parties' negotiations took place over a six month period.  Exhibit 2 at ¶¶ 5-18.  On September 7, 2018, the parties began preliminary class settlement discussions. *Id.* at ¶ 5. During preliminary class settlement discussions, Plaintiff informed Defendant that any settlement was contingent upon Defendant's production of records that support its representation of the class size and Defendant's net worth. *Id.* at ¶ 6.  Over the next few months, Defendant provided information related to its estimated net worth and estimated number of class members.  *Id.* at ¶ 7.  Subject to Defendant producing evidence verifying its net worth and the number of class members, Plaintiff made an initial class demand on December 17, 2018.  *Id.* at ¶ 8.  On January 4, 2019, Defendant produced its financial statements for 2017 as well as third quarter financial statements for 2018, and

information regarding putative class members. *Id.* at ¶ 10. Over the next few months, the parties continued to negotiate until an arms-length settlement was reached on March 28, 2018. *Id.* at ¶ 18.

**B.    The Agreement contains no obvious deficiencies and does not improperly grant preferential treatment.**

The Settlement Agreement does not provide for differential treatment of the Class Members, except for the payment to Plaintiff. This, however, is by design. "Incentive awards [to class representatives] are justified when necessary to induce individuals to become named representatives." *UFCW Local 880–Retail Food Employers Joint Pension Fund v. Newmont Min. Corp.*, 352 Fed. Appx. 232, 235 (10th Cir. 2009) (quoting *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722–23 (7th Cir. 2001)). Even in FDCPA actions, courts have approved the payment of class representative service awards above and beyond the higher amount authorized by 15 U.S.C. § 1692k(a)(2)(B). *See Garland v. Cohen & Krassner*, No.08–cv–4626, 2011 WL 6010211, at *13 (E.D.N.Y. Nov. 29, 2011) (approving class representative award of $3,000 in FDCPA class action); *Gross v. Wash. Mut. Bank, F.A.*, No.02–cv–4135, 2006 WL 318814, at *6 (E.D.N.Y. Feb. 8, 2006) (approving $5,000 award for the named plaintiff in settlement of FDCPA action). The amount that Plaintiff anticipates requesting from the Settlement Fund will be, nevertheless, subject to the Court's approval. While Plaintiff's counsel believes the Court will be persuaded to award the amount sought, the Settlement Agreement is not contingent upon the Court approving the award of *any* amount to Plaintiff.

Similarly, the amount that Plaintiff's counsel intends to seek in this action will be awarded separate and apart from the Settlement Fund and entirely subject to the Court's approval. The Settlement Agreement is not contingent upon the Court approving the award of *any* amount of attorney's fees. Exhibit 1 § 4.1(C). Courts have found this structuring of fee awards to be proper.

The Settlement Agreement provides for direct notice to all class members and meets the requirements for due process. While class members are required to submit claims to receive payment, this is an approved method of distributing class awards and allows for interested class members to receive a non-de minimis sum. Once the Settlement Fund is transmitted to Plaintiff's counsel, it will be held in an IOLTA account, and no part of the Settlement Fund will revert back to Defendant. What's more, the release granted by class members is narrowly tailored to claims arising out of the letter and envelope giving rise to their class membership. The proposed settlement contains no obvious deficiencies.

### C.    The Agreement falls within the range of possible approval.

That Plaintiff and the Class are unlikely to recover more through litigation supports approval of the settlement.    "The FDCPA drastically limits the potential recovery in a class action to actual damages plus 'the lesser of $500,000 or 1 per centum of the net worth of the debt collector.'" *Gonzalez*, 2016 WL 3360700 at *4 (quoting 15 U.S.C. § 1692k(a)). Here, after production of financial business records, Defendant's book value was established and the class settlement fund is more than the class could receive through contested litigation.    Exhibit 2 at ¶ 19.    This is therefore an excellent

result for the Class. The expected payment to Eligible Class Members, of at least $12, is similar to or more than the amounts awarded in other approved FDCPA class actions. *See Passafiume v. NRA Grp., LLC*, 274 F.R.D. 424, 431 (E.D.N.Y. 2010) (granting preliminary certification in an FDCPA class where each member would receive an estimated $2.87); *Jancik v. Cavalry Portfolio Servs., LLC*, 2007 WL 1994026, at *11 (D. Minn. July 3, 2007) (certifying a class where potential recovery for class members was $6.94); *Nichols v. Northland Grps., Inc.*, Nos. 05 C 2701, 05 C 5523, 06 C 43, 2006 WL 897867, at *11 (N.D.Ill. Mar. 31, 2006) (certifying a class with potential recovery of $13.40 per class member).

**V.      This Court should approve the proposed notice plan.**

Under Rule 23(e), this Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1). Notice of a proposed settlement to class members must be the "best notice practicable." *See* Fed. R. Civ. P. 23(c)(2)(B). "[B]est notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). If class members can be identified and are given individual notice, there is no requirement for notice by publication or other means. *See In re Wal-Mart Stores, Inc. Wage and Hour Litig.*, No. 06-02069, 2008 WL 1990806, at *2 (N.D. Cal. May 5, 2008).

The aforementioned settlement terms are fair, adequate, and reasonable, given that class members will be given individual notice of this action and of the proposed settlement, and they will be given the opportunity to object to the settlement or exclude

themselves from the settlement entirely and not be bound by the Court's judgment. The notice will be sent by U.S. mail to each of the members of the Class, which is the best notice practicable. The proposed notice, which is attached to this motion as Exhibit 1-A, provides fair, reasonable, and adequate notice to the Class of the proposed settlement and of their rights.   A website will also be established (and referenced in the individual notice) containing relevant court filings, including the order granting class certification, a generic version of the Letter, the live pleading, and any other documents that the Court requires be posted.

The plan complies with Rule 23 and due process because, among other things, it informs class members, directly, of: (1) the nature of the action; (2) the essential terms of the settlement, including the definition of the class and claims asserted; (3) the binding effect of a judgment if the class member does not request exclusion; (4) the process for submitting a claim; (5) the process for objection and/or exclusion, including the time and method for objecting or requesting exclusion and that class members may make an appearance through counsel; (6) information regarding the named plaintiff's request for statutory damages, a class representative award, and reimbursement of her attorney's fees and expenses; and (7) how to make inquiries. Fed. R. Civ. P. 23(c)(2)(B).  In short, this notice plan ensures that class members' due process rights are amply protected and should be approved. *See* Fed. R. Civ. P. 23(c)(2)(A).

**VI.     Scheduling a final approval hearing is appropriate.**

Finally, the last step in the settlement approval process is a final approval hearing at which this Court may hear all evidence and argument necessary to make its final

settlement evaluation. Fed. R. Civ. P. 23(e)(2). This Court will determine after the final approval hearing whether the settlement should be approved, and whether to enter a judgment and order of dismissal with prejudice under Rule 23(e). The parties request that the Court set a date for a hearing on final approval, at the Court's convenience, approximately 120 days after the Court's preliminary approval of the settlement.

## VII.    Conclusion and prayer for relief.

The Parties respectfully request that this Court enter the accompanying Order granting preliminary approval of the above-described class action settlement.

Dated: May 10, 2019

                                              Respectfully submitted,

                                              s/ Russell S. Thompson, IV
Russell S. Thompson, IV (029098)
Thompson Consumer Law Group, PLLC
5235 E. Southern Ave., D106-618
Mesa, AZ 85206
Telephone: (602) 388-8898
Facsimile: (866) 317-2674
rthompson@ThompsonConsumerLaw.com

Attorneys for Plaintiff

                                              s/ Patricia A. Premeau
Patricia A. Premeau (015076)
Rusing Lopez & Lizardi, P.L.L.C.
14300 North Northsight Boulevard, Suite 210
Scottsdale, AZ 85260-3676
Tel: (480) 719-7307
Fax: (480) 719-7370
ppremeau@rllaz.com

Attorneys for RSKM, LLC

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### CERTIFICATE OF SERVICE

I certify that on May 10, 2019, I served the foregoing document on Defendant by filing a copy of the same with the Court using CM/ECF, which will send notification of such filing to all counsel of record.

<u>s/ Russell S. Thompson, IV</u>
Russell S. Thompson, IV