Russell S. Thompson, IV (029098)
Thompson Consumer Law Group, PLLC
5235 E. Southern Ave., D106-618
Mesa, AZ 85206
Telephone: (602) 388-8898
Facsimile: (866) 317-2674
rthompson@ThompsonConsumerLaw.com
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Vickie Corr, *on behalf of herself and all others similarly situated*,<br><br>Plaintiff,<br><br>vs.<br><br>RSKM, LLC dba E&A Medical Billing & Insurance Services,<br><br>Defendant. | Case No. 2:18-cv-02323-DLR<br><br>**JOINT MOTION FOR CLASS CERTIFICATION AND FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

Plaintiff Vickie Corr ("Plaintiff") and Defendant RSKM, LLC dba E&A Medical Billing & Insurance Services ("Defendant") (together "the Parties") hereby move the Court for an order certifying a class of individuals for final settlement purposes ("the Class"), as set forth in the Parties' proposed settlement agreement (the "Agreement"), and granting final approval of the Agreement pursuant to Rule 23 of the Federal Rules of Civil Procedure. In support thereof, the Parties respectfully show the following:

**I.     Introduction**

After notifying the class members, the claims administrator received 413 valid claims. If final approval is granted, eligible class members will receive at least $23.64. No objections were received, nor has any class member requested exclusion from the

action. The Court should approve Plaintiff's award of $2,000 under the Agreement in recognition of her service to the class. The Agreement is fair, reasonable, and adequate, in light of the class recovering more than could be achieved through further litigation.

## II.     Relevant Background

Plaintiff brought this action against Defendant under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. Plaintiff's allegations arose out of Defendant's use of an envelope containing a window, through which the words ""**DELINQUENT CLAIMS DEPT**" were visible. *See* Doc. 1-2 at 3. The FDCPA prohibits debt collectors from "[u]sing any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails…." 15 U.S.C. § 1692f(8). Plaintiff also alleged violations of §§ 1692e, 1692g(a), arising from the confusing and misleading manner in which Defendant used its names "E&A Medical Billing & Insurance Services" and "RSKM, LLC." *See* Doc. 1 at 11-15.

The parties began preliminary class settlement discussions on September 7, 2018. *See* Doc. 23-5 at ¶ 5. The negotiations were contingent upon Defendant's production of records that supported its representation of the class size and its net worth[1]. *Id*. at ¶ 6. These records were produced on January 4, 2019. *Id*. at ¶ 10. Class counsel identified 7,335 distinct class members from the list of names and addresses that Defendant furnished. *Id*. at ¶ 20. Defendant produced balance sheets for the periods ending December 31, 2017 and September 30, 2018. *Id*. at ¶ 10. Defendant's September 30,

---

[1] Under the FDCPA, the other members of a class action may receive statutory damages of up to 1% of the debt collector's net worth. *See* 15 U.S.C. § 1692k(a)(2)(B)(ii).

2018 balance sheet shows the total members' equity. *See* Declaration of Russell S. Thompson IV ("Thompson Declaration"), at ¶ 11.  In addition, the balance sheet for this period shows distributions to Defendant's members and a calculation of goodwill. *Id*. at ¶ 12.  The September 30, 2018 balance sheet shows a higher net worth than the December 31, 2017 balance sheet, minimizing any concern that Defendant used accounting practices to reduce its balance sheet net worth. *Id*. at ¶ 13.

Class Counsel took the position that Plaintiff would be able to recover up to $8,350 on behalf of the other class members. *Id*. at ¶ 14.  While negotiations were ongoing, Plaintiff moved for class certification. *See* Doc. 19.  Defendant agreed to a class settlement wherein it would pay (1) $2,000 to Plaintiff, (2) $9,035 to the other class members, (3) $15,000 in attorney's fees and costs, and (4) $15,000 in claims administration costs. *See* Doc. 23-1 at 5-6.  The Parties notified the Court that they reached a class settlement on April 9, 2019, Doc. 20, and, on May 10, 2019, they submitted a joint motion for preliminary approval of Agreement, Doc. 23.

On May 16, 2019, the Court conditionally certified the class for settlement purposes and preliminarily approved the Agreement. Doc. 24. Shortly thereafter, Defendant tendered $26,035 to Class Counsel, representing the amounts to be paid under the Agreement to Plaintiff, the Eligible Class Members, and First Class, Inc., a class action claims administrator ("the Administrator"). Thompson Declaration at ¶ 15. Class

Counsel provided a list of 7,308[2] names and addresses to the Administrator. *See* Declaration of Bailey Hughes ("Hughes Declaration"), at ¶ 5. On June 3, 2019, the Administrator established a website, www.easettlement.com, and posted thereto all relevant materials about the preliminarily approved class settlement, as well as a longer form of the notice. *Id.* at ¶ 3. The Administrator also established a toll-free number for class members to receive information about the settlement, submit claims, and leave messages to receive a return call. *Id*. at ¶ 4.

On June 17, 2019, after removing incomplete and *additional* duplicate records and running the class list through the National Change of Address database, the Administrator mailed notices to 7,296 class members. *Id*. at ¶¶ 6-10. The notices were mailed via postcard containing a six-character alphanumeric code. *See* Exhibit A. The postcard notices were otherwise materially identical in substance and form to the one which the Court preliminarily approved. *See* Doc. 23-2. Class members used the postcard code to submit their claims on the class settlement website or by calling the toll-free number and leaving a message containing their notice code and personal information.

The Administrator received 721 returned notices without a forwarding address. Hughes Declaration at ¶ 11. Another 148 notices were either forwarded to a new address by the U.S. Postal Service or re-mailed by the Administrator to the updated address

---

[2] At the preliminary certification phase, Class Counsel represented that it had identified 7,335 class members. Doc. 23-5 at ¶ 10. This figure was obtained after attempting to remove all duplicates from the list of names and addresses provided by Defendant. Class Counsel later identified a more accurate method for doing so, which resulted in 7,308 entries remaining in the list. *See* Thompson Declaration at ¶ 17.

provided. *Id*. at ¶ 12. The Administrator has received no objections or requests for exclusion. *Id*. at ¶¶ 13-14. The Administrator received 413 valid claim forms on or before the cutoff date of August 16, 2019—of which, 358 were submitted online and 55 were submitted via phone. *Id*. at ¶ 15. Three claims were received after the deadline for submission and, thus, deemed invalid. *Id*. at ¶ 16.

The Administrator's final invoice is $2,243.99, which includes the cost of mailing settlement checks to the Eligible Class Members, if the Agreement is approved. Thompson Declaration at ¶ 18. Thus, the Administrator's total costs are $14,270.82. Under the Agreement, the remainder set aside for administration ($729.18) becomes part of the settlement fund. *See* Doc. 23-1 at 6, ¶ D ("To the extent the Settlement Administration Expenses are less than $15,000, the remainder will become part of the amount distributed to the Eligible Class Members."). Thus, if the Court approves the Agreement, the 413 Eligible Class Members will receive a check in the amount of at least $23.64, totaling $9,763.32 in payments. Hughes Declaration at ¶ 17.

### III. Legal Standard

"The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). "[U]pon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)—the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

"[T]he court may approve [a class settlement] only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

## IV.  The Court should grant final approval of the class settlement.

The Parties have provided the class with the best notice practicable under the circumstances. No objections or requests for exclusion have been received. The Agreement is fair, reasonable, and adequate, as it provides more relief than the class could receive through further litigation. Accordingly, the Parties' proposed settlement meets the criteria of Rule 23 and should be given final approval.

### A.  The parties have provided the class with the best notice practicable under the circumstances.

The Parties have provided individual notice to over 90% of the class members. Rule 23 "'does not insist on actual notice to all class members in all cases' and 'recognizes it might be *impossible* to identify some class members for purposes of actual notice.'" *Briseno v. ConAgra Foods, Inc*., 844 F.3d 1121, 1129 (9th Cir.) (quoting *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 665 (7th Cir. 2015)), *cert. denied sub nom. ConAgra Brands, Inc. v. Briseno*, 138 S. Ct. 313, 199 L. Ed. 2d 206 (2017).

Here, individual notices were mailed to all class members at the best address available, after searching for any more recent addresses in the National Change of Address database and re-mailing notices for which a return address was provided. Of the 7,296 class members, 6,575—or 90.1%—are presumed to have received actual notice. Courts have found this delivery rate to be consistent with due process. *Accord Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 289-90 (6th Cir. 2016) (affirming contested

class settlement where "slightly more than 90% of the [post]cards were delivered to an address associated with the member"). Of those 6,575 individuals, 416—or 6.3%—actually submitted claims, which supports a finding that the notice was clear and advised them of their rights. *See Touhey v. United States*, No. EDCV 08-01418-VAP, 2011 WL 3179036, at *7 (C.D. Cal. July 25, 2011) (approving class settlement where there was "a response rate of approximately 2%").

The Court should find that the form and method for notifying the class of the Agreement, and its terms and conditions, meet the requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process, constitute the best notice practicable under the circumstances, and constitute due and sufficient notice to those entitled to the notice.

**B.    The settlement is fair, reasonable, and adequate.**

The Parties' proposed settlement provides the class with a greater recovery than could be achieved through further litigation and deserves final approval. In determining whether a proposed settlement meets the Rule 23(e) standard, district courts in the Ninth Circuit must consider the standard set forth in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998). This requires balancing the following factors: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Id*. at 1026; *see also*

*Harper v. Law Office of Harris & Zide LLP*, No. 15-CV-01114-HSG, 2017 WL 995215, at *3 (N.D. Cal. Mar. 15, 2017) (quoting *Hanlon* factors).

### 1. The class will receive more than could be recovered through further litigation.

The amount being offered to the class strongly supports approving the settlement. The FDCPA allows the other members of the class to receive statutory damages in an amount *up to* 1% of the debt collector's "net worth." 15 U.S.C. § 1692k(a)(2)(B)(ii). If approved, the Eligible Class Members will receive at least $9,763.32, distributed via checks in the amount of $23.64, under the Agreement. Thus, for the class to have even a *chance* of receiving a greater recovery through further litigation, Class Counsel would need to show that Defendant's "net worth" is greater than $976,320.

While the Ninth Circuit has not addressed the meaning of the term "net worth" under the FDCPA, the Seventh Circuit has issued a persuasive opinion that the phrase refers to a company's "balance sheet" net worth, not its fair market value. *Sanders v. Jackson*, 209 F.3d 998, 1001 (7th Cir. 2000) ("[B]ecause there is no indication in the FDCPA that the term net worth should be used in anything but its normal sense, we also look to book net worth or balance sheet net worth as reported consistently with [generally accepted accounting principles]."). District courts have relied on *Sanders* when determining the fairness of proposed class settlements under the FDCPA. *See e.g.*, *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 683 (N.D. Cal. 2016) ("'Net worth' for the purposes of the FDCPA means balance sheet net worth, *not fair market net worth including goodwill*.") (emphasis added).

Under this standard, Defendant's net worth is considerably lower, i.e., the total members' equity listed on its balance sheet for the period during which the action began. Thompson Declaration at ¶ 11. This is not a case in which Class Counsel has decided to forgo the opportunity to establish that goodwill or distributed profits should be counted towards net worth. As such, the amount offered under the Agreement strongly supports the conclusion that the settlement is fair, reasonable, and adequate.

### 2. Class Counsel does not believe that expensive and complex litigation will yield a more favorable outcome.

It is Class Counsel's view that further litigation into Defendant's net worth would be risky, expensive, and complex—and unlikely to result in a more favorable settlement. Thus, the second and sixth *Hanlon* factors also support approval of the settlement.

Class Counsel notes that the balance sheets provided by Defendant, while independently prepared, have not been independently audited. *Id*. at ¶ 10. In theory, Class Counsel could conduct in-depth discovery into the data points therein to confirm their accuracy—with the hope that this might yield a higher net worth. This would require retaining an expert witness in the area of forensic accounting, which is extremely expensive. Class Counsel does not believe that this would ultimately lead to proving that Defendant's net worth is greater than $976,320. *Id*. at ¶ 19.

Based on the revenue reported for Defendant in a widely used, commercial credit reporting database, Hoover's, Class Counsel finds its statements of revenue to be credible. Thompson Declaration at ¶¶ 20-21. Furthermore, Class Counsel has reviewed audited financial statements of many other debt collectors and finds that Defendant's

reported profits are in line with the industry. *Id*. at ¶ 22. Thus, it is unlikely that proceeding with expensive and complex discovery will uncover discrepancies in the unaudited balance sheets *so significant* as to raise Defendant's net worth in a material way.

If anything, doing so runs the risk that Defendant will present a case that its "net worth" under the FDCPA is less than $976,320. Proceeding to trial also creates a risk that a jury would award an amount less than the full amount available to the class.

### 3. No class member has objected to the settlement.

The last *Hanlon* factor—the reactions of the class members—also supports approval. While hundreds of class members have submitted claims, none have objected to the settlement, nor have any excluded themselves from the action. "By any standard, the lack of objection of the Class Members favors approval of the Settlement." *Schuchardt*, 314 F.R.D. at 686. Under the balancing test set forth in *Hanlon*, the Agreement is fair, reasonable, and adequate.

### C. The Court should approve the $2,000 settlement payment to Plaintiff.

The Agreement allows the Court to award Plaintiff up to $2,000 for her service to the class. This amount is fair and should be approved, in light of the amount being recovered by the class. "Incentive payments to class representatives do not, by themselves, create an impermissible conflict between class members and their representatives." *In re Online DVD-Rental Antitrust Litig*., 779 F.3d 934, 943 (9th Cir. 2015). In fact, the FDCPA allows the named representative to receive up to $1,000,

while other class members receive an award based on the debt collector's net worth "without regard to a minimum individual recovery…." 15 U.S.C. § 1692k(a)(2)(B).

Courts frequently permit class incentive awards in the amount of $2,000 in FDCPA actions. *See e.g.*, *Adsit v. Dundrum, LLC*, No. 2:17-CV-00110-SMJ, 2019 WL 1270937, at *3 (E.D. Wash. Mar. 19, 2019); *Tripp v. Berman & Rabin P.A.*, No. 14-CV-2646-DDC-GEB, 2017 WL 86186, at *3 (D. Kan. Jan. 9, 2017); *Harlan v. Transworld Sys., Inc.*, No. CIV.A. 13-5882, 2015 WL 505400, at *2 (E.D. Pa. Feb. 6, 2015).

While the amount provided for Plaintiff under the Agreement is twice the amount allowed by statute, the class members are receiving an *even larger* multiple than they would likely receive through litigation. The *Tripp* court relied on such a circumstance in approving a $2,000 service award. 2017 WL 86186, at *3 ("Also, no one can have concerns that Ms. Tripp placed her interests above the interests of the class. Her personal recovery is limited to the statutory maximum, but the class members actually get more than the statutory maximum."). In sum, the proposed award to Plaintiff is fair and reasonable.

## V.   Conclusion

After receiving the best practicable notice under the circumstances, no class member has excluded himself or herself from the settlement, nor objected to it. The Agreement calls for Eligible Class Members to receive substantially more than they would receive if this case were to proceed to trial. Class Counsel does not believe that protracted and expensive litigation would lead to the discovery of evidence supporting a greater net worth—to the contrary, such litigation would come with substantial risks.

The amount requested for Plaintiff is reasonable and in line with other FDCPA settlements. The Court should grant final approval of the settlement.

Dated: October 21, 2019

                                            Respectfully submitted,

                                            <u>s/ Russell S. Thompson, IV</u>
                                            Russell S. Thompson, IV (029098)
                                            Thompson Consumer Law Group, PLLC
                                            5235 E. Southern Ave., D106-618
                                            Mesa, AZ 85206
                                            Telephone: (602) 388-8898
                                            Facsimile: (866) 317-2674
                                            rthompson@ThompsonConsumerLaw.com

                                            Attorneys for Plaintiff

                                            <u>s/ Patricia A. Premeau</u>
                                            Patricia A. Premeau (015076)
                                            Rusing Lopez & Lizardi, P.L.L.C.
                                            14300 North Northsight Boulevard, Suite 210
                                            Scottsdale, AZ 85260-3676
                                            Tel: (480) 719-7307
                                            Fax: (480) 719-7370
                                            ppremeau@rllaz.com

                                            Attorneys for RSKM, LLC

## **CERTIFICATE OF SERVICE**

I certify that on October 21, 2019, I served the foregoing document on Defendant by filing a copy of the same with the Court using CM/ECF, which will send notification of such filing to all counsel of record.

<u>s/ Russell S. Thompson, IV</u>
Russell S. Thompson, IV
